Jodi R. Bohr (Bar No. 023265)
jodi.bohr@gknet.com
Hannah H. Porter (Bar No. 029842)
hannah.porter@gknet.com
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:   (602) 530-8000
Facsimile:   (602) 530-8500
Attorneys for Defendant New Way Staffing, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas E. Perez, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>TBG Logistics, LLC, a limited liability company; Matthew Connors, individually and as a managing agent of TBG Logistics; Employer Solutions Staffing Group, LLC, a limited liability company; Employer Solutions Staffing Group II, LLC, a limited liability company; Employer Solutions Staffing Group III, LLC, a limited liability company; Employer Solutions Staffing Group IV, LLC, a limited liability company; Countrywide Payroll & HR Solutions, Inc., doing business as Countrywide HR; New Way Staffing, LLC, doing business as Sync Staffing,<br><br>Defendants. | No. 2:16-cv-02916-ROS<br><br>**MOTION TO DISMISS CROSSCLAIMS** |
| Employer Solutions Staffing Group, LLC; Employer Solutions Staffing Group II; Employer Solutions Staffing Group III, LLC; Employer Solutions Staffing Group IV, LLC,<br><br>Crossclaimant,<br><br>v.<br><br>TBG Logistics, LLC; New Way Staffing, LLC; Matthew Connors,<br><br>Cross-defendants. | |

Defendant/Cross-defendant New Way Staffing, LLC dba as Sync Staffing ("Sync Staffing"), moves under Fed. R. Civ. P. 12(b)(6) for an order dismissing the Crossclaimants Employer Solutions Staffing Group, LLC; Employer Solutions Staffing Group II; Employer Solutions Staffing Group III, LLC; and Employer Solutions Staffing Group IV, LLC's (collectively, "ESSG") crossclaims in their entirety. The crossclaims do not state a viable cause of action against Sync Staffing.

In accord with this Court's order concerning motions to dismiss (Doc. 7), former counsel for Sync conferred with the ESSG's counsel concerning the possibility of dismissing the crossclaims or amending the crossclaims with regards to Sync Staffing; ESSG declined to dismiss or amend the crossclaims to eliminate the claims that are legally barred.

This motion is based upon the file, record, and proceedings herein, and upon the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES
## BACKGROUND INFORMATION

This is an employment case. The Department of Labor ("DOL") brought an action (the "DOL action") against ESSG, TBG Logistics, LLC ("TBG"); Countrywide Payroll & HR Solutions, Inc. ("Countrywide HR"); Sync Staffing; and Matthew Connors (collectively, the "Defendants") alleging that the Defendants violated Sections 15(a)(2) and 15(a)(5) of the Fair Labor Standards Act of 1938 (the "FLSA") by failing to properly pay overtime wages. See Plaintiff's First Amended Complaint (Doc. 39). The DOL's Complaint alleges that each of the Defendants is an employer under FLSA and together served as a team of co-employers. Id. ¶ 14. Sync Staffing has denied any violation.

ESSG then brought crossclaims against the other defendants asserting four causes of action: (1) indemnity under the FLSA, (2) contribution under the FLSA, (3) a claim for contribution and indemnity under federal common law, and (4) a contractual claim for indemnity and/or contribution against Sync Staffing. See ESSG's Answer to Plaintiff's

First Amended Complaint and First Amended Crossclaims (Doc. 40). Thus, ESSG seeks to recoup (or receive contribution for) any costs and fees incurred by ESSG in the DOL action, any amount paid by ESSG in settlement of the DOL action, or any loss incurred by ESSG in the DOL action. See id.

The only paragraphs in ESSG's crossclaim that mention acts undertaken by Sync Staffing are as follows:[1]

- Paragraph 7: Specifically, the First Amended Complaint alleges that ESSG and the other named parties acted, conspired, colluded, cooperated and schemed together furtively, fraudulently and willfully to deprive certain named individuals of lawful regular and overtime wages under the FLSA. ESSG has denied it engaged in any unlawful acts or omissions and has denied all liability for claims and damages asserted by the Plaintiff in the First Amended Complaint. The salient allegations for purposes of the cross-claims pleaded herein are set forth in Paragraphs 10 through 13 of the First Amended Complaint.

- Paragraph 9: ESSG's alleged liability to Plaintiff, if any, was caused solely or primarily by the acts or omissions of TBG, Sync Staffing, or Connors, or all or some of them.

- Paragraphs 14 and 18 are identical to paragraph 9.

- Paragraph 25: ESSG's alleged liability to Plaintiff, if any, was caused solely or primarily by the wrongful acts or omissions of Sync Staffing.

Notably, nothing in ESSG's crossclaims, or the referenced paragraphs of the DOL's first amended complaint, particularly describes any wrongful conduct of Sync Staffing that could plausibly give rise to a claim for indemnity or contribution. But even if they did, it is clear that no such claim exists under federal law.

---

[1] For the purposes of this motion only, Sync Staffing accept ESSG's allegations of factual matters of which it has personal knowledge as true. See, e.g., Peloza v. Capistrano Unified School Dist., 37 F.3d 517, 521 (9th Cir. 1994). Sync Staffing reserves the right to contest all of ESSG's allegations in all future proceedings.

3

# ARGUMENT

## I. ESSG'S CROSSCLAIMS FAIL TO ALLEGE SUFFICIENT FACTS TO SUPPORT ITS CLAIMS.

A plaintiff's "threadbare recitals of the elements of a cause of action" are insufficient to survive dismissal on the pleadings. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Riverside Healthcare Sys., L.P., 534 F.3d 1116, 1122 (9th Cir. 2008); Tucson Elec. Power Co. v. El Paso Elec. Co., 2009 WL 2929431, at *5 (D. Ariz. 2009). Rule 12, that is, is designed to weed out a claim that regardless of its technical elements simply is not "plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007); Tucson Elec. Power, 2009 WL 2929431 at *5. Those portions of the pleadings that merely recite legal conclusions or the bare elements of a legal cause of action are not entitled to an assumption of truth; the question is whether the underlying facts as alleged by the plaintiff "plausibly give rise to an entitlement to relief" against the defendant. Iqbal, 556 U.S. at 679. The crossclaims in this case do not state a claim against Sync Staffing that is "plausible on its face," or allege any underlying facts that "plausibly give rise to an entitlement to relief" against it. Under those circumstances, the Court should dismiss the crossclaims against Sync Staffing.

The crossclaims wholly fail to adequately describe any acts undertaken by Sync Staffing that would give rise to an indemnity or contribution claim (whether under the FLSA, federal common law, or pursuant to an agreement). Although ESSG alleges four separate times that its own liability was caused by the acts or omissions of Sync Staffing or the other defendants, see ESSG's Answer to Plaintiff's First Amended Complaint and First Amended Crossclaims (Doc. 40) ¶¶ 9, 14, 18, 25, those paragraphs fail to provide any description of those alleged acts or omissions.

Indeed, the crossclaims' only factual allegations are found in paragraph 7, which provides:

> Specifically, the First Amended Complaint alleges that ESSG and the other named parties acted, conspired, colluded, cooperated and schemed together furtively, fraudulently and willfully to deprive certain named individuals of

4

>lawful regular and overtime wages under the FLSA. ESSG has denied it engaged in any unlawful acts or omissions and has denied all liability for claims and damages asserted by the Plaintiff in the First Amended Complaint. The salient allegations for purposes of the cross-claims pleaded herein are set forth in Paragraphs 10 through 13 of the First Amended Complaint.

Id. ¶ 7. The conclusory allegation that Sync Staffing and the other named defendants conspired to deprive individuals of wages fails to state a claim. It omits any allegations of how Sync Staffing participated in the alleged scheme or even what it did in furtherance of the alleged conspiracy. ESSG's pleading leaves Sync Staffing without any information to adequately defend against this generic charge. This woeful lack of detail is exactly what the notice pleading requirement of Rule 8 is designed to prohibit. Accordingly, these paragraphs fail to state any claim against Sync Staffing that is "plausible on its face."

Furthermore, ESSG's reference to paragraphs 10 to 13 of the First Amended Complaint does not save its crossclaims. Those paragraphs do not provide any illumination as to actions by Sync Staffing that would give rise to the relief sought by ESSG. Nothing in those paragraphs even alleges a violation of the FLSA.

For example, paragraph 10 does not even concern Sync Staffing: it only alleges that some employees were transferred to Countrywide's payroll and others were transferred to TBG's payroll. First Amended Complaint (Doc. 39) ¶ 10. Next, paragraph 11 alleges that alleges that Sync Staffing and the other defendants "performed all aspects and duties of employment" and allegedly controlled the material aspects of the employment relationship. Id. ¶ 11. Paragraph 12 alleges the Defendants "designed and maintained a convoluted employment structure." Id. ¶ 12. Finally, paragraph 13 that the Defendants "set and dictated employment conditions for all employees." Id. ¶ 13.

While Sync Staffing has denied these allegations, see Sync Staffing's Answer to the First Amended Complaint (Doc. 41), assuming for purposes of this motion only that these allegations are true, nothing in these paragraphs of the DOL First Amended Complaint supports ESSG's crossclaims for indemnity and contribution. Sync Staffing's alleged participation in aspects of employment does not establish that it somehow

5

conspired with the other defendants to violate the FLSA. Thus, ESSG's crossclaims fail to contain "sufficient factual material" to state a plausible claim against Sync Staffing. See Iqbal, 556 U.S. at 678.

This alone merits dismissal of ESSG's crossclaims. But even if ESSG could amend its crossclaims to include a recitation of sufficient factual material to support its claims, those claims still must fail as a matter of law because neither the FLSA nor the federal common law creates a right of action for contribution or indemnity in this situation.

## II.   THE FLSA DOES NOT CREATE A RIGHT OF ACTION FOR CONTRIBUTION OR INDEMNITY IN FAVOR OF EMPLOYERS.

Although the FLSA comprehensively covers who can be liable as an employer, the acts that give rise to liability under the FLSA, and the remedies available to wronged employees, the FLSA is completely silent as to whether an employer can seek contribution or indemnity for its liability under the FLSA. This legislative silence is telling. As multiple federal courts have recognized, Congress never intended to allow employers to effectively escape FLSA liability through contribution or indemnity. Accordingly, these courts refuse to find any implicit right to contribution or indemnity under the FLSA.

The Ninth Circuit has not yet addressed whether the FLSA creates an implicit right to contribution or indemnity in favor of employers. However, every Circuit that has addressed the issue (the 2nd, 4th, 5th, and 10th) has rejected an employer's attempt to seek contribution or indemnity for its FLSA liability. See Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 143 (2d Cir. 1999); Lyle v. Food Lion, Inc., 954 F.2d 984, 987 (4th Cir.1992) (proper to dismiss counterclaim under FLSA because court should not "engraft an indemnity action upon this otherwise comprehensive federal statute"); LeCompte v. Chrysler Credit Corp., 780 F.2d 1260, 1264 (5th Cir.1986) (same); Martin v. Gingerbread House, Inc., 977 F.2d 1405, 1408 (10th Cir.1992) ("a third party complaint by an employer seeking indemnity from an employee is preempted" by the FLSA). Similarly,

district courts regularly dismiss claims for contribution or indemnity arising out of FLSA violations. E.g., Villareal v. El Chile, Inc., 601 F. Supp. 2d 1011, 1016 (N.D. Ill. 2009) ("Defendants' counterclaim for indemnity (or contribution) with respect to Plaintiffs' FLSA claim is dismissed with prejudice."); Finke v. Kirtland Cmty. Coll. Bd. of Trustees, 359 F. Supp. 2d 593, 601 (E.D. Mich. 2005) (dismissing third-party complaint seeking contribution or indemnity for damages awarded under the FLSA); Bailon v. Seok AM No. 1 Corp., No. C09-05483JRC, 2009 WL 4884340, at *3 (W.D. Wash. Dec. 9, 2009) (dismissing FLSA defendants' counterclaim for indemnity and contribution against plaintiff manager). Given the uniformity on the subject, the Ninth Circuit is almost certain to follow the lead set by the other circuit courts and refuse to read a right to contribution or indemnity into the FLSA.

The proper framework to resolve this issue can be found in the U.S. Supreme Court's decision in Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO, 451 U.S. 77 (1981), which also dealt with an employer's claims for contribution from an entity who allegedly bore responsibility for the employer's liability under federal employment statutes. Specifically, the employer in Northwest Airlines sought contribution from a union for a proportion of the employer's liability for its violations of the Equal Pay Act and Title VII. Because neither the Equal Pay Act nor Title VII explicitly created a right to contribution in favor of employers, the Court had to determine if a contribution remedy could be inferred from the statutes. Id. at 90. To that end, the Court looked to the typical tools of statutory interpretation: the language of the statute, its legislative history, and the "underlying purpose and structure of the statutory scheme." Id.

Turning to statutory language first, the Court found nothing to indicate that Congress intended to create a right to contribution. Id. Significantly, the statutes omitted any mention of a right to contribution. Id. Moreover, because the purpose of the statutes was to benefit employees, not employers, it could not be said that employers were members of the class for whose special benefit either statute was enacted. Id.

7

The comprehensive structure of the statutes also counseled against an implied right to contribution. The statutes made "express provision for private enforcement in certain carefully defined circumstances," but did not include any provisions relating to an employer's right to contribution. Id. As the Court noted, the "comprehensive character of the remedial scheme expressly fashioned by Congress <u>strongly evidences an intent not to authorize additional remedies</u>." Id. at 93-94 (emphasis added).

Lastly, the legislative history did not reveal any discussion of the issue of contribution. Id. at 94. Given that there was no "manifestation of an intent on the part of Congress to create a right to contribution in favor of employers under the Equal Pay Act and Title VII," the Court held that there was no implied right to contribution under the statutes. Id.

The same analysis holds true with regards to the FLSA. Nothing in the text of the FLSA itself, its structure and purpose, or its legislative history suggests that Congress intended to create a right to indemnity or contribution in favor of employers.

<u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 143 (2d Cir. 1999) is also instructive. In <u>Herman</u>, the DOL sued a company and its owners for violating the overtime provisions of the FLSA. One of the co-defendants then asserted crossclaims for contribution and indemnification from the other co-defendants, arguing that as co-employers, they were also liable for the FLSA violations alleged. Id. at 138. The district court dismissed the crossclaims and the defendant appealed. Id.

Applying the reasoning in <u>Northwest Airlines</u>, the Second Circuit held that "there is no right of contribution or indemnification for employers found liable under the FLSA." <u>Herman</u>, 172 F.3d at 144. "First, the text of the FLSA makes no provision for contribution or indemnification." <u>Herman</u>, 172 F.3d at 144. And just like the Equal Pay Act or Title VII, the FLSA was designed to protect employees, not employers. Id. Therefore, employers are not members of the class for whose benefit the FLSA was enacted. Id. The FLSA also has a "comprehensive remedial scheme," which "strongly counsels against judicially engrafting additional remedies." Id. Finally, the legislative

8

1  history of the FLSA "is silent on a right to contribution or indemnification." Id.  For these
2  reasons, the Second Circuit dismissed the crossclaims for indemnity or contribution. Id.
3  This Court should reach the same conclusion here.
4  An argument that Congress intended to create a right to indemnity and contribution
5  because the FLSA provides for joint liability is a red herring.  Congress imposed broad
6  liability on employers in order to ensure that the responsible parties did not escape
7  liability for violations of the FLSA.  Thus, it would run counter to congressional intent to
8  allow an employer to effectively immunize himself from liability by pinning the damages
9  on others.  See Canjura v. Able Serv. Contractors, Inc., 866 F. Supp. 258, 261 (D. Md.
10 1994) ("[T]he remedial purpose of the FLSA, i.e. to protect employees, would not be
11 furthered by reading into the statute a right to contribution."); Lee v. Krystal Co., No.
12 CIV.A. 11-0627-WS-C, 2013 WL 424656, at *3 (S.D. Ala. Feb. 4, 2013) ("Allowing
13 employers such as Krystal to shirk their FLSA obligations on the theory that someone else
14 (*i.e.,* a joint employer such as Elite) will foot the bill by operation of state law would be
15 antithetical to the compelling public policy considerations animating the FLSA.").
16 Moreover, the Supreme Court has held that joint and several liability does not imply a
17 right to contribution.  See Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 646
18 (1981); see also Canjura, 866 F. Supp. at 261.
19 The statutory text, legislative history, and public policy all point to one conclusion:
20 the FLSA contains no implied right to contribution or indemnity in favor of employers.
21 Accordingly, this Court should dismiss Counts 1 and 2 of ESSG's crossclaims.

22 **III.   NO RIGHT TO CONTRIBUTION OR INDEMNITY ARISES UNDER THE
23         COMMON LAW.**

24 ESSG also asserts a claim for indemnity and contribution under the federal
25 common law.  This claim too fails as a matter of law.  There is no general right to
26 indemnity or contribution under the federal common law and it would be improper to
27 create one here given the comprehensive nature of the FLSA.
28

9

Once again, Northwest Airlines provides the proper analysis. There, the Supreme Court refused to create a common law right of indemnity or contribution in favor of employers who violated the Equal Pay Act or Title VII. The Court noted that there is no "general federal right to contribution." 451 U.S. at 96-97. Although the Court has fashioned contribution remedies in admiralty cases, "where the federal judiciary's lawmaking power may well be at its strongest," the Court determined it would be improper to add a right to contribution in an area where Congress has legislated. Id. "The judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs." Id. at 97.

The FLSA is one such "carefully considered" legislative program. It is comprehensive in scope, yet it does not provide for a right of contribution or indemnity in favor of liable employers. It is not the court's role to craft a new right of action that may well conflict with Congress' intent to hold all employers liable for their violations of the FLSA. Thus, the Court should dismiss Count 3 of ESSG's crossclaims.

### IV. ESSG'S CLAIM FOR CONTRACTUAL INDEMNITY VIOLATES PUBLIC POLICY AND THUS FAILS AS A MATTER OF LAW.

ESSG alleges that it entered into an Employee Recruiting and Placement Outsource Agreement (the "Agreement") with Sync Staffing on January 14, 2013. ESSG's Answer to Plaintiff's First Amended Complaint and First Amended Crossclaims (Doc. 40) ¶ 22. In relevant part, paragraph 7(a) of the Agreement provides:

> Each party agrees to indemnify, defend and hold harmless the other party . . . from and against any and all losses, liabilities, expenses (including court costs and attorneys' fees) and claims for damage of any nature whatsoever, . . . which the other may incur, suffer, become liable for, or which may be asserted or claimed against the other as a result of the actual or alleged acts, errors or omissions of the first party, including without limitation any violation or breach of paragraph 5 above by the first party, or any claims whatsoever arising out of actual or alleged violation of wage and hours laws, . . . the Fair Labor Standards Act of 1938 (29 U.S.C. 201 et seq.), . . . by the first party or any recruited employee.

ESSG alleges that its alleged liability to Plaintiff was caused "solely or primarily" by Sync Staffing and so Sync Staffing should indemnify ESSG pursuant to paragraph 7(a) of the Agreement. Id. ¶¶ 25-26. This argument fails as a matter of law because this provision is void as against public policy.

The Ninth Circuit has not addressed whether a contractual provision requiring a party to indemnify another for that party's FLSA liability is enforceable. But other courts have refused to enforce such provisions because they run counter to public policy for the same reasons that an implied right to indemnity does not exist under the FLSA.

In Gustafson v. Bell Atl. Corp., 171 F. Supp. 2d 311 (S.D.N.Y. 2001), the plaintiff worked as a chauffeur for the defendant company. During the relevant time period, the defendant required non-employee chauffeurs like the plaintiff to form a corporation with which the defendant would then contract for driving services. After the plaintiff chauffeur sued the defendant for its failure to properly pay him overtime under the FLSA, the defendant company then brought a third-party claim for contractual indemnification against the plaintiff's corporation, of which the plaintiff was the sole owner, officer and employee.

As to the contractual indemnity claim, the court was not persuaded by the defendant's characterization of the claim as one for breach of contract rather than an action for indemnification under the FLSA:

> Whether or not [the plaintiff's corporation] breached a contractual obligation, defendants' attempt to recover damages from [the plaintiff's corporation] for overtime violations is an attempt to receive indemnification for FLSA liability. As *Herman* makes clear, "there is no right to contribution or indemnification for employers held liable under the FLSA." 172 F.3d at 144.

Gustafson, 171 F. Supp. 2d at 328. This was true even if the corporation was culpable as a co-employer. Id. (citing Herman, 172 F.3d at 143 (explaining that "regardless of the status of the party from whom [the employer] seeks contribution" no right to indemnification exists for employers under the FLSA)).

The court also emphasized that allowing the indemnification claim would run counter to the policies behind the FLSA:

> Furthermore, allowing defendants to obtain indemnification from [the plaintiff's corporation] contradicts the policies of the FLSA. As *Herman* explains, "the [FLSA] was designed to regulate the conduct of employers for the benefit of employees . . . . ." Id. at 144. <u>Allowing indemnification in cases such as this would permit employers to contract away their obligations under the FLSA, a result that flouts the purpose of the statute.</u> We therefore hold that the Company has no right to indemnification for damages assessed under the FLSA.

Id. (Emphasis added.)

Gustafson is not alone. In <u>Local 1035, Int'l Bhd. of Teamsters v. Pepsi Allied Bottlers, Inc.</u>, 99 F. Supp. 2d 219 (D. Conn. 2000), the court dismissed the defendant employer's contractual indemnity counterclaim against the employees' union because the indemnification clause in the collective bargaining agreement violated the public policy embodied in the FLSA. The court stated:

> [A] holding that the indemnification clause is enforceable would indeed mean that employers would have little reason to be concerned over whether labor agreements comply with the statutorily mandated and unwaivable overtime pay requirements of the FLSA, knowing full well that if they are later found to have violated such requirements, such employers would be totally compensated for any injuries resulting from such action . . . .

Id. at 221-222.   Accordingly, the court refused to allow the defendant to use an indemnification clause to immunize itself from "liability for its own wrongful acts." Id.

And in <u>Goodman v. Port Auth. of N.Y. & New Jersey</u>, 850 F. Supp. 2d 363, 388–89 (S.D.N.Y. 2012), the court dismissed a defendant's crossclaims for contractual indemnity for claims brought under the FLSA.  The court refused to enforce the contractual provision because allowing such a claim would give employers little incentive to comply with the FLSA.  Id. (quoting <u>Local 1035, Int'l Bhd. of Teamsters</u>, 99 F.Supp.2d 219).  See also <u>McDougal v. G & S Tobacco Dealers, L.L.C.</u>, 712 F. Supp. 2d 488, 497 (N.D.W. Va. 2010) (holding that third party claims for indemnification or contribution to plaintiff's FLSA claims "whether the same are based on contractual or equitable

1   contribution, indemnification, breach of contract, breach of warranty, agency, or another
2   state contract or equity claim, are preempted by the provisions of the FLSA; are
3   antithetical to the purpose of the FLSA; undermine the public policy established by the
4   FLSA; and are barred by the doctrines of Conflict and Obstacle Preemption").

5   These cases all recognize that if employers can receive indemnity for their FLSA
6   liability, employers will have little to no incentive to ensure their compliance with the
7   FLSA.  Cf. 1800 Ocotillo, LLC v. WLB Grp., Inc., 219 Ariz. 200, 202 ¶ 12, 196 P.3d 222,
8   224 (2008) ("Because an indemnity provision eliminates all liability for damages, it also
9   eliminates much of the incentive to exercise due care.").  Why would an employer bother
10  monitoring if someone else will be held entirely responsible?

11  As discussed above, the FLSA was designed to ensure that any employer involved
12  in an FLSA violation would be accountable for the failure to properly pay overtime.  The
13  FLSA is not concerned with apportioning fault among the joint employers.  Instead,
14  Congress imposed joint and several liability, meaning that an employer could be liable for
15  damages technically attributable to another employer.  Thus, Congress intended to ensure
16  that all employers had a reason to ensure their compliance with the FLSA.  Allowing a
17  contractual indemnity claim would upset the liability scheme envisioned by Congress and
18  effectively immunizes defendants whom Congress clearly intended to be liable.

19  Here, paragraph 7(a) of the Agreement violates the public policies behind the
20  FLSA and is unenforceable against Sync Staffing.  See 1800 Ocotillo, LLC, 219 Ariz. at
21  202 ¶ 7, 196 P.3d at 224 ("Contract provisions are unenforceable if they violate legislation
22  or other identifiable public policy.").  Accordingly, count 4 of ESSG's crossclaim should
23  be dismissed for failure to state a claim.

24  Sync Staffing also requests that the Court expressly direct the entry of final
25  judgment in its respect in accord with Fed. R. Civ. P. 54(b).  No just reason exists for
26  delay in the entry of final judgment on crossclaims that do not (and cannot) state any
27  viable cause of action.
28

**CONCLUSION**

ESSG's crossclaims do not state any legal claim against Sync Staffing. For these reasons, Sync Staffing respectfully requests that the Court dismiss ESSG's crossclaims against it, with prejudice and on the merits, and award it the costs that it has incurred herein in accord with Fed. R. Civ. P. 54(d)(1) and that the Court also determine in accord with Fed. R. Civ. P. 54(b) that there is no just reason for delay in the entry of final judgment in its favor on ESSG's crossclaims and direct the entry of such final judgment without delay.

RESPECTFULLY SUBMITTED this 4th day of November, 2016.

GALLAGHER & KENNEDY, P.A.


By: */s/ Hannah H. Porter*
    Jodi R. Bohr
    Hannah H. Porter
    2575 East Camelback Road
    Phoenix, Arizona 85016-9225
    Attorneys for Defendant New Way
    Staffing, LLC

I certify that on this 4th day of November, 2016, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Janet M. Herold
Susan Seletsky
Boris Orlov
Attorneys for plaintiff

Rebecca J. Levine
Attorney for defendants Employer Solutions
Staffing Group, LLC (I-IV)

Steve Biddle
Cory G. Walker
Attorneys for defendants TBG Logistics and
Matt O'Connor

Henry Solano
Attorney for defendant Countrywide Holdings,
Inc.

*/s/ Christine C. Marsceill*