1    WO

6              IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

9    R. Alexander Acosta,[1]                    No. CV-16-02916-PHX-ROS

10            Plaintiff,                         **ORDER**

11   v.

12   TBG Logistics LLC, et al.,

13            Defendants.

15         Defendant ESSG's payroll processing employee knew that, from August 2013 to

16   July 2014, other ESSG employees were working more than 40 hours per week but not

17   receiving overtime pay.  The Secretary of Labor ("Plaintiff") now moves for summary

18   judgment, arguing ESSG engaged in repeated "willful violation[s]" of the Fair Labor

19   Standards Act ("FLSA").  ESSG contends its undisputed violations of the FLSA cannot

20   qualify as "willful" because it is a very large company that cannot be expected to always

21   comply with the FLSA.  Moreover, the relevant violations allegedly were the result of

22   negligence by an "entry level employee."  Neither ESSG's size nor the position of the

23   payroll employee preclude a finding of willfulness.  And given that there are no disputed

24   facts regarding what happened, Plaintiff's motion will be granted.

25                              **BACKGROUND**

26         The relevant facts are undisputed.  Defendant ESSG[2] is a "staffing company" that

---

[1] In April 2017, R. Alexander Acosta became the Secretary of Labor.  He is substituted as
the named plaintiff.  *See* Fed. R. Civ. P. 25(d).
[2] The parties use "ESSG" to refer to four defendants: Employer Solutions Staffing Group,

"recruit[s], place[s], and assign[s]" people to work at various jobsites. ESSG often enters into contracts with other companies requiring those other companies "do the recruiting, placing, and assigning" of employees while ESSG will handle administrative matters, such as payroll processing. As relevant here, ESSG entered into a contract with an entity known as Sync Staffing whereby Sync Staffing located individuals to work at a jobsite run by yet another company named TBG Logistics. At that jobsite, employees worked under the direction of TBG Logistics in unloading tractor trailers delivering grocery store products. Despite not having direct contact with the employees performing the work, ESSG concedes it was an "employer" under the FLSA.

TBG Logistics, Sync Staffing, and ESSG worked together to track the hours each employee worked and the amount of pay each employee would receive. TBG Logistics kept a spreadsheet showing the number of hours each employee worked and how those hours should be paid, *i.e.* at the regular rate or at the increased rate for overtime. Each pay period, TBG Logistics sent that spreadsheet to Sync Staffing. Sync Staffing then forwarded the spreadsheet to ESSG. Once ESSG received the spreadsheet, an ESSG employee named Michaela Haluptzok ("Haluptzok") processed the payroll and issued the paychecks.

In early November 2012, TBG Logistics sent the first payroll spreadsheet to Sync Staffing. That spreadsheet reflected many employees worked more than 40 hours in a week but it stated all the hours should be paid at the regular rate. Sync Staffing then sent the spreadsheet to Haluptzok. Once she received the information, Haluptzok prepared a preliminary draft indicating how each employee would be paid. Because many employees had worked more than 40 hours per week, the preliminary draft reflected those employees receiving 1.5 times their regular hourly wage for all hours worked in excess of 40. Haluptzok sent the draft to Sync Staffing but a Sync Staffing employee called and

---

LLC; Employer Solutions Staffing Group II, LLC; Employer Solutions Staffing Group III, LLC; and Employer Solutions Staffing Group IV, LLC. The parties do not differentiate between these entities and the Court will assume there are no important distinctions. Thus, the Court will follow the parties' lead and refer simply to "ESSG."

told Haluptzok to process the payroll exactly as specified by TBG Logistics. That is, all hours should be paid "as straight time regular hours," *i.e.* no overtime. (Doc. 103-2 at 3). Haluptzok "did not receive details" from Sync Staffing why processing the payroll in that manner would be appropriate. (Doc. 103-2 at 3). In fact, Haluptzok had no "understanding of what type of work ESSG employees were . . . performing at TBG Logistics" and she did not ask her superiors for guidance. (Doc. 103 at 13). Instead of questioning the legality of Sync Staffing's instructions, Haluptzok processed the payroll without paying any overtime.

When processing the payroll as Sync Staffing instructed, Haluptzok had to dismiss error messages generated by ESSG's software program. Those error messages indicated the employees who worked more than 40 hours per week might not be receiving "compensat[ion] at the proper rate." (Doc. 98 at 4). Having dismissed the error messages, the employees were paid without any overtime premium.

Haluptzok processed the payroll for the employees in the same manner during the following months. Between August 30, 2013, and July 27, 2014, there were "1103 instances where employees were not paid overtime for hours over 40 in a week, an average of 22 violations per week." (Doc. 98 at 5). In processing the payroll for those workweeks, Haluptzok had to repeatedly dismiss the error messages generated by the software indicating the pay might not be correct. The total amount of unpaid overtime during that period was $78,518.28. (Doc. 98 at 5). ESSG's relationship with Sync Staffing and TBG Logistics ended on July 27, 2014.

Plaintiff filed the present suit on August 30, 2016. The suit originally named as defendants ESSG, TBG Logistics, Sync Staffing, and a few individuals. The complaint alleged all the defendants had violated the FLSA by failing to pay overtime. The only defendant still contesting liability is ESSG. Plaintiff now seeks summary judgment on its claim that ESSG's behavior constituted "willful" violations of the FLSA. ESSG opposes that motion, claiming it is a large company that usually complies with the FLSA. ESSG's size, together with the fact that Haluptzok was a low-level employee, allegedly

means there is at least a dispute of fact whether its behavior was "willful."

## ANALYSIS

The FLSA provides for a two-year statute of limitations "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). ESSG's relationship with TBG Logistics and Sync Staffing ended on July 27, 2014, and this suit was not filed until August 30, 2016. Thus, ESSG's liability turns entirely on whether its violations of the FLSA were "willful" such that the three-year limitations period applies.

In 1988, the Supreme Court held "willful" in the context of the FLSA refers "to conduct that is not merely negligent." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). In the Supreme Court's view, an employer does not act "willfully" if it merely knew "the FLSA was in the picture." *Id.* Rather, an employer acts "willfully" if it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* After that decision, the Ninth Circuit has repeatedly addressed the type of behavior that can qualify as "willful." Those decisions have adopted a relatively broad view of what will qualify as an employer engaging in "reckless disregard" of its obligations.

As outlined by the Ninth Circuit, "willful" behavior does not require "an employer . . . knowingly have violated the FLSA." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908 (9th Cir. 2003). Instead, an employer acts willfully when it "disregard[s] the very possibility that it [is] violating the statute." *Id.* at 908–09. Thus, an employer may act with reckless disregard if the employer was "on notice of its FLSA requirements, yet [took] no affirmative action to assure compliance with them." *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016). The underlying facts in *Flores* are herlpful for determining whether ESSG's behavior should be deemed willful.

In *Flores*, the employer "was aware of its obligations under the FLSA" but the record contained "no evidence of affirmative action taken by the [employer] to ensure that its [compensation practices] complied with the FLSA." *Id.* It was "undisputed" the

employer had "failed to investigate whether its [compensation scheme] complied with the FLSA at any time following" the initial adoption of that scheme. *Id.* In fact, the employer "put forth no evidence of any actions it took to determine whether its [compensation scheme] complied with the FLSA, despite full awareness of its obligation to do so under the Act." *Id.* Based on those facts, the employer's behavior qualified as "willful."

Like the employer in *Flores*, it is undisputed ESSG was aware of its obligations under the FLSA. It is also undisputed ESSG—through its designated agent Haluptzok—received information that its employees were working more than 40 hours. Despite that knowledge, ESSG processed the payroll without conducting *any* investigation into whether the employees were entitled to overtime. Using the language of *Flores*, ESSG "was aware of its obligations under the FLSA," knew the employees were working more than 40 hours, but took no "affirmative action . . . to ensure" the payroll processing was correct. *Id.* In these circumstances, ESSG willfully violated the FLSA as a matter of law.

ESSG disagrees with this conclusion and offers a variety of unusual legal arguments why there is at least a question of fact regarding its alleged willfulness. Those legal arguments revolve around ESSG's size and its contention that it cannot be responsible for Haluptzok's knowledge and actions. As briefly explored below, ESSG's arguments have no merit.

ESSG first claims it could not have acted willfully because it is a large company, processing a large number of payroll transactions, and it only violated the FLSA a handful of times. According to a self-conducted audit of its payroll transactions, ESSG violated the FLSA in only 0.3% of all payroll transactions during the time period. (Doc. 102 at 10). Given that purported record of compliance, ESSG believes "[i]t would be extremely impractical to require a company . . . to conduct a companywide audit on a whim to look for a problem that didn't exist and which it did not even suspect existed." (Doc. 102 at 11). This argument is not entirely coherent but to the extent the Court can

understand it, ESSG misunderstands how the FLSA operates.

The incoherent portion of this argument is ESSG's assertion that it would be "impractical" to require it "to look for a problem that didn't exist." It is undisputed that ESSG did not pay overtime owed to its employees. Thus, to the extent ESSG is arguing an audit would have been "impractical" because it would not have uncovered violations, the facts of this case prove otherwise.

The coherent portion of this argument is ESSG's belief that it would be "impractical" for a large company to pay every employee in the manner required by the FLSA. The statute, however, does not contain an exemption for large employers. That is, an employer must comply with the FLSA no matter how large it is or how many payroll transactions it processes. And while a large employer might commit some FLSA violations unknowingly—such as through typographical errors—that is not the type of errors committed here. In this case, Haluptzok repeatedly processed payroll information where employees had worked more than 40 hours. Haluptzok had no reason to believe those employees were exempt from the FLSA's overtime provisions but she processed the payroll without overtime pay. Such knowing violations of the FLSA cannot be deemed non-willful merely because ESSG is a large employer.

ESSG next claims it did not behave willfully because it delegated its FLSA compliance obligations to Haluptzok, a low-level employee, and high-ranking employees never learned of the violations. ESSG offers no authority recognizing this as a plausible basis for an employer to avoid FLSA liability. And to the extent relevant authority exists, it is contrary to ESSG's position.

ESSG appears to believe an employer can commit a willful violation of the FLSA only if the relevant action was taken by an individual carrying the formal title of "manager" or "supervisor." ESSG offers no authority in support of this position and the Court has been unable to find any case adopting such an approach. The lack of applicable authority is not surprising because ESSG's position would create a very strange incentive for employers. Under ESSG's argument, an employer could insulate

itself from FLSA liability for willful violations by delegating its payroll practices to low-level employees. If an employer ensured no high-ranking employees were involved in payroll processing, FLSA violations would never qualify as "willful." The FLSA was not meant to incentivize employers in this manner. *Cf. Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 799 (9th Cir. 2010) ("Congress's purpose in enacting the FLSA was to protect all covered workers from substandard wages and oppressive working hours.").

In a related argument, ESSG contends FLSA violations committed by a low-level employee should not be imputed to the employer. Again, ESSG provides no authority indicating an employee's rank within an organization is the crucial inquiry. Rather, the relevant inquiry is whether a particular employee was the individual responsible for making pay decisions or ensuring FLSA compliance. As noted by other courts, an employer that delegates FLSA compliance to a particular employee must be held responsible for that employee's actions. *See Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 943 (8th Cir. 2008) (quoting cases). To hold otherwise would "nullify the [FLSA]." *Id.*

Here, ESSG structured its business such that Haluptzok was the sole individual responsible for receiving time records, processing those records, and deciding whether employees should be paid overtime. ESSG effectively delegated all of its FLSA compliance to Haluptzok. Regardless of Haluptzok's position in ESSG's hierarchy, she was the only individual who could possibly act on behalf of ESSG regarding overtime decisions. In such circumstances, Haluptzok's knowledge and behavior must be imputed to ESSG.

Finally, ESSG presents an argument regarding the "collective scienter doctrine." (Doc. 102 at 7). It is unclear what, precisely, ESSG has in mind with this argument but it appears to be another way of asserting Haluptzok's knowledge should not be imputed to ESSG. As far as the Court can tell, however, no federal decision has ever used the "collective scienter" doctrine in a case involving the FLSA. The doctrine usually appears

in securities fraud class actions. *See, e.g.*, *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008). ESSG offers no explanation why the doctrine should be imported into the FLSA context and the Court cannot conceive of one.

Neither ESSG's size nor its decision to delegate FLSA compliance to Haluptzok prevents a finding of willfulness. The undisputed facts are that Haluptzok knew employees were working more than 40 hours but not being paid overtime. Haluptzok made no effort to determine whether that was lawful and the illegal behavior continued for more than a year, with Haluptzok repeatedly dismissing warnings that such pay violated the FLSA. Under these facts, ESSG willfully violated the FLSA. Thus, the three-year statute of limitations applies. Plaintiff will be directed to submit a form of judgment to be entered against ESSG.

Accordingly,

**IT IS ORDERED** the Motion for Summary Judgment (Doc. 97) is **GRANTED**.

**IT IS FURTHER ORDERED** no later than **July 6, 2018**, Plaintiff shall submit a proposed form of judgment containing the exact amount of judgment to be entered against ESSG.

Dated this 27th day of June, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge

- 8 -